**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Debra Montrose

    v.                                        Case No. 17-cv-148-SM

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration


**REPORT AND RECOMMENDATION**


Pursuant to 42 U.S.C. § 405(g), Debra Montrose moves to
reverse the Acting Commissioner's decision to deny her
applications for Social Security disability insurance benefits,
or DIB, under Title II of the Social Security Act, 42 U.S.C. §
423, and for supplemental security income, or SSI, under Title
XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves
for an order affirming her decision.  For the reasons that
follow, the decision of the Acting Commissioner, as announced by
the Administrative Law Judge ("ALJ"), should be affirmed.


## I. **Standard of Review**

The applicable standard of review in this case provides, in
pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without
remanding the cause for a rehearing.  The findings of
the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Acting Commissioner] has committed a legal

or factual error in evaluating a particular claim.'"  Manso-

Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per

curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts."  Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the

2

[Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. **Background**

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 14, is part of the court's record and will be summarized here, rather than repeated in full.

On October 30, 2013, Montrose had a stroke and was hospitalized for approximately five days.  When she was taken to the hospital, she complained of difficulty with speech, and was

3

diagnosed with a speech disturbance.

In March of 2014, Montrose saw Dr. Ruth James, complaining of swelling in her right ankle. That complaint did not result in a diagnosis, but Dr. James instructed Montrose to elevate her ankle, wear compression stockings, and wear a brace if possible. In August of 2014, Montrose saw Dr. Eric Samuel, complaining of a flare-up of swelling in her right leg. He gave a diagnosis of peripheral edema[1] and prescribed compression hose. In July of 2015, Dr. James or Dr. Samuel ordered an x-ray of Montrose's right ankle, based upon her complaints of swelling and pain. That x-ray resulted in these impressions: "1. No acute fracture or dislocation. 2. Diffuse soft tissue swelling about the ankle. 3. Achilles enthesopathy."[2] Administrative Transcript (hereinafter "Tr.") 477.

With regard to Montrose's physical residual functional capacity ("RFC"),[3] the record includes one opinion, rendered by

---

[1] The term "edema" is "[a]t the gross level, used to describe the physical sign commonly likened to swelling or increased girth that often accompanies the accumulation of fluid in a body part, most often a limb." Stedman's Medical Dictionary 617 (28th ed. 2006).

[2] Enthesopathy is "[a] disease process occurring at the site of insertion of muscle tendons and ligaments into bones or joint capsules." Stedman's, supra note 1, at 649.

[3] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

Dr. Burton Nault, a state agency consultant.  According to Dr. Nault, who rendered his opinion in May of 2014, Montrose could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand and/or walk (with normal breaks) for a total of two hours, sit (with normal breaks) for a total of about six hours in an eight-hour work day, and push and/or pull the same amount she could lift and/or carry.  He further opined that Montrose could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds.  He identified no manipulative, visual, communicative, or environmental limitations.

In March of 2014, Dr. Stefanie Griffin conducted a consultative psychological examination of Montrose and prepared a Mental Health Evaluation Report based upon her examination.[4] Dr. Griffin provided a diagnosis of "[a]djustment disorder with depressed mood."  Tr. 448.  She also gave the following opinions on Montrose's then-current level of functioning:

> Activities of Daily Living:  . . .  Ms. Montrose appears independent in completing daily activities.  . . .
>
> Social Functioning:  . . .  Overall, she appears

---

[4] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request."  20 C.F.R. §§ 404.1519 & 416.919.

capable of appropriate social functions at this time.

Understanding and Remembering Instructions:  . . .
Ms. Montrose appears capable of understanding and
remembering instructions.  . . .

Concentration and Task Completion:  . . .  M[s].
Montrose appears generally capable of attending to and
completing tasks.  . . .

Reaction to Stress, Adaptation to Work or Work-like
Situations:  . . .  From a cognitive and psychological
standpoint, Ms. Montrose appears generally capable of
adhering to a work schedule, interacting appropriately
with supervisors and co-[workers] . . . .

Tr. 447-48.

After Dr. Griffin wrote her report, Dr. Nicholas Kalfas, a
non-examining consulting psychologist, conducted a psychiatric
review technique ("PRT")[5] assessment based upon Montrose's
medical records.  After noting a diagnosis of affective
disorders, Dr. Kalfas opined that Montrose had no restrictions
on her activities of daily living, no difficulties in
maintaining social functioning, mild difficulties in maintaining
concentration, persistence, or pace, and had no repeated
episodes of decompensation, each of extended duration.

In June of 2014, Montrose's therapist referred her to Dr.
Paul Lindstrom for a psychiatric evaluation.  He gave her a
diagnosis of "major depressive disorder, recurrent, moderate."

---

[5] The Social Security Administration uses the PRT to
evaluate the severity of mental impairments.  See 20 C.F.R. §§
404.1520a & 416.920a (describing the PRT).

Tr. 453.  Under the heading "Impression," Dr. Lindstrom wrote:

> The woman has a post stroke depression, partly due to
> her changed life circumstance and having to live in a
> shelter now, and partly due to the stroke itself.  . .
> .  I don't think that she has capacity to work at
> present as a result of the stroke she had, which has
> affected her physical capacity and diminished her
> capacity for expressive language.

Id.

After Montrose's claims were denied at the initial level,

she received a hearing before an ALJ.  The ALJ, in turn, issued

a decision that includes the following relevant findings of fact

and conclusions of law:

> 3.  The claimant has the following severe impairments:
> central nervous system ("CNS") (20 CFR 404.1520(c) and
> 416.920(c)).[6]
>
> . . . .
>
> 4.  The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals the severity of one of the listed impairments
> in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
> and 416.926).
>
> . . . .
>
> 5.  After careful consideration of the entire record,
> I find that the claimant has the residual functional
> capacity to perform sedentary work as defined in 20
> CFR 404.1567(a) and 416.967(a) with the following
> additional limitations: she can stand/walk for two

_____

[6] Obviously, "central nervous system" is not a physical
impairment.  However, later on in his decision, the ALJ made it
clear that the impairment he deemed to be severe is called, by
the applicable regulations, "vascular insult to the brain."  20
C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 11.04.

hours in an eight-hour workday.  She can occasionally
climb ramps and stairs, but can never climb ladders,
ropes, or scaffolds.  Lastly, she can occasionally
balance, stoop, kneel, crouch, and crawl.

. . . .

6.  The claimant is unable to perform any past
relevant work (20 CFR 404.1565 and 416.965).

. . . .

10.  Considering the claimant's age, education, work
experience, and residual functional capacity, there
are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 33, 37, 41.  Based upon his assessment of Montrose's RFC,

and a hypothetical question posed to a vocational expert that

incorporated the RFC recited above, the ALJ determined that

Montrose was able to perform the jobs of document preparer,

addresser, and stuffer.


## III. <u>Discussion</u>

### A.   <u>The Legal Framework</u>

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under

a disability.  <u>See</u> 42 U.S.C. §§ 423(a)(1)(A)-(D).  To be

eligible for supplemental security income, a person must be

aged, blind, or disabled, and must meet certain requirements

pertaining to income and assets. See 42 U.S.C. § 1382(a). The question in this case is whether the ALJ correctly determined that Montrose was not under a disability from October 20, 2013, through November 13, 2015.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Acting
> Commissioner] considers objective and subjective
> factors, including: (1) objective medical facts; (2)
> [claimant]'s subjective claims of pain and disability
> as supported by the testimony of the [claimant] or
> other witness; and (3) the [claimant]'s educational
> background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

**B.   Montrose's Claims**

Montrose claims that the ALJ erred by failing to properly

consider: (1) the opinion provided by Dr. Lindstrom; and (2) her

ankle impairment.  Neither claim has merit.

1.   Dr. Lindstrom's Opinion

Montrose begins her discussion of the ALJ's evaluation of

Dr. Lindstrom's opinion by noting that the ALJ considered her

depression, but determined that it was not a severe impairment.

Then, after identifying various purported deficiencies in the

ALJ's evaluation of Dr. Lindstrom's opinion, she makes the

following claim: "The ALJ's error regarding Dr. Lindstrom's

opinion led him to not considering [claimant]'s depression in

the RFC and ultimately affected the credibility assessment."

Cl.'s Mem. of Law (doc. no. 11-1) 6.[7]

---

[7] The Acting Commissioner understands Montrose to be
claiming that the ALJ's mistakes led him to make an error at
step 2 of the sequential evaluation process, see Resp't's Mem.

The Acting Commissioner concedes, and the court agrees, that the ALJ made several mistakes in his discussion of Dr. Lindstrom's opinion. Specifically, the ALJ erred by: (1) finding that Dr. Lindstrom had assigned Montrose a global assessment of functioning ("GAF") score of 41;[8] (2) using the incorrectly attributed GAF score to find internal inconsistencies in Dr. Lindstrom's opinion;[9] (3) failing to evaluate Dr. Lindstrom's opinion that Montrose had no capacity to work at the time he examined her.[10] The problem with Montrose's reliance upon those errors is that those errors did not lead to the consequences that, in her view, flowed from

_____

of Law (doc. no. 13-1) 3, but the court takes claimant's memorandum at face value, and understands her to be claiming that the ALJ incorrectly assessed: (1) her RFC; and (2) the credibility of her statements about the symptoms of her impairment(s).

[8] Claimant's GAF score was actually reported in a document captioned "Initial Clinical Summary" that was signed by three medical professionals other than Dr. Lindstrom. See Tr. 459-61.

[9] In addition, the court can see no basis for the ALJ's finding that Dr. Lindstrom "opined that the claimant has a moderate severity level of functioning," Tr. 35, which is the opinion that, in the ALJ's view, conflicts with the GAF score.

[10] While the opinion in question concerned an issue reserved to the Acting Commissioner, and was not entitled to any "special significance," 20 C.F.R. §§ 404.1527(d)(3) & 416.927(d)(3), an ALJ is "required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner," Social Security Ruling 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996).

them.

### a.    Montrose's RFC

Montrose states that "[i]t is unclear whether the ALJ noted Dr. Lindstrom's opinion on work capacity," Cl.'s Mem. of Law (doc. no. 11-1) 5, and then claims that "[t]he ALJ's error regarding Dr. Lindstrom's opinion led him to not considering [her] depression in the RFC," id. at 6.  But even if the ALJ had evaluated the opinion that Montrose correctly faults him for overlooking, there is nothing in that opinion that would have supported the inclusion of a depression-related limitation in her RFC.

Dr. Lindstrom stated that he did not think that Montrose had a capacity to work "as a result of the stroke she had, which has affected her physical capacity and diminished her capacity for expressive language."  Tr. 453.  While Dr. Lindstrom diagnosed Montrose with major depressive disorder, he did not identify any functional limitations that resulted from Montrose's depression.  To the contrary, he mentioned an effect on her physical capacity and a diminution of her linguistic capacity that resulted from her stroke, not limitations that resulted from the depression that resulted, in part, from her stroke.  Moreover, while Dr. Lindstrom referred to an effect on Montrose's physical capacity, he did not say what that effect

was, and while he referred to a diminution of Montrose's
linguistic capacity, he did not indicate the magnitude or the
scope of that diminution. Thus, nothing that Dr. Lindstrom said
in the opinion at issue provides substantial evidence for a
limitation in Montrose's RFC. And, for her part, Montrose does
not identify any limitation that the ALJ should have included in
her RFC but did not on account of his failure to properly
evaluate Dr. Lindstrom's opinion.[11] In short, Montrose has
identified nothing in the ALJ's handling of Dr. Lindstrom's
opinion that calls into question of the validity of his RFC
assessment.

### b. Credibility

Equally unavailing is Montrose's claim that the ALJ's
mishandling of Dr. Lindstrom's opinion infected his assessment
of the credibility of statements she made about the symptoms of
her impairment(s). That claim rests upon the following passage,
drawn from the ALJ's assessment of Montrose's statements:

> Additionally, given the claimant's allegations of
> totally disabling symptoms, one might expect to see
> some indication in the treatment records of

---

[11] Given the lack of concrete limitations in Dr. Lindstrom's
psychiatric evaluation, the ALJ could only have used that
evaluation to craft limitations on Montrose's RFC by
interpreting the raw medical data reported in it, which is
impermissible, see Giandomenico v. U.S. Soc. Sec. Admin., Acting
Comm'r, No. 16-cv-506-PB, 2017 WL 5484657, at *4 (D.N.H. Nov.
15, 2017) (quoting Manso-Pizarro, 76 F.3d at 17; citing Berrios
Lopez v. Sec'y of HHS, 951 F.2d 427, 430 (1st Cir. 1991)).

> restrictions placed on the claimant by her medical
> treatment providers.  Yet a review of the record
> reveals no such restrictions.  In fact, the record
> does not contain any opinion from treating or
> examining physicians indicating that the claimant is
> disabled or even has limitations greater than those
> determined in this decision.

Tr. 40.  Plainly, Montrose is correct in asserting that the ALJ

erred by stating the record contains no opinion from an

examining source that Montrose is disabled; that is precisely

what Dr. Lindstrom said when he opined that he did not "think

that she [had] the capacity to work at present."  Tr. 453.

However, the ALJ's error is not enough to undermine his

credibility assessment.

To begin, the ALJ was correct when he stated that no

treatment provider ever placed any restrictions on Montrose.

And, as the court has already noted, while Dr. Lindstrom opined

that Montrose was unable to work (due to physical and linguistic

impairments, rather than the depression he had diagnosed), he

provided no specific limitations on her capacity to perform

work-related activities, either physical or mental.

For her part, Montrose identifies the ALJ's error, but

develops no real argument, simply claiming that the ALJ's

"statement that there was 'no opinion' in Plaintiff's favor"

somehow "affected the credibility assessment."  Cl.'s Mem. of

Law (doc. no. 11-1) 6.  Montrose's undeveloped argument falls

short of establishing a reversible error.  In the discussion
that follows, the court begins with the relevant law and then
turns to Montrose's claim.

An ALJ must assess the credibility of a claimant's
statements about her symptoms when: (1) the claimant has "an
underlying impairment that is shown by medically acceptable
diagnostic techniques and could be expected to cause the
claimant's symptoms," Natsis v. Berryhill, No. 16-cv-063-LM,
2017 WL 1032258, at *4 (D.N.H. Mar. 16, 2017) (quoting Hunt v.
Colvin, No. 13-CV-074-JD, 2013 WL 5273807, at *8 (D.N.H. Sept.
17, 2013)); but (2) "the objective medical evidence in the
record does not substantiate the claimant's statements," Floyd
v. Berryhill, No. 15-cv-456-PB, 2017 WL 2670732, at *5 (D.N.H.
June 21, 2017).  "[T]he ALJ should evaluate the credibility of
the [claimant's] statements 'based on a consideration of the
entire case record'" id. (citing Social Security Ruling ("SSR")
96-7p, 1996 WL 374186, at *2, *5 (S.S.A. July 2, 1996),
superseded by SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16,
2016)), and "must take into account a number of factors, known
in this circuit as the Avery factors," id. (citing 20 C.F.R. §
416.929(c)(3); Avery, 797 F.2d at 28).  The Avery factors are

> the claimant's daily activities, the frequency and
> intensity of pain and symptoms, precipitating and
> aggravating factors, medication taken to address pain
> and symptoms, other treatment for pain and symptoms,

> other measures taken to relieve pain or symptoms, and
> other factions related to functional limitations and
> restrictions.

Squeglia v. Berryhill, No. 16-cv-238-JD, 2017 WL 773528, at *5

(D.N.H. Feb. 28, 2017) (citing 20 C.F.R. § 404.1529(c)(3).

"Although an ALJ must consider the Avery factors, he or she need

not address each one." Floyd, 2017 WL 2670732, at *5 (citing

Phelps v. Astrue, No. 10-cv-240-SM, 2011 WL 2669637, at *7

(D.N.H. July 7, 2011)).

"The credibility determination by the ALJ, who observed the

claimant, evaluated his demeanor, and considered how that

testimony fit in with the rest of the evidence, is entitled to

deference, especially when supported by specific findings."

Natsis, 2017 WL 1032258, at *3 (quoting Frustaglia v. Sec'y of

HHS, 829 F.2d 192, 195 (1st Cir. 1987); citing Flood v. Colvin,

No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016)).

In the end, "[a]n ALJ's credibility determination will be

affirmed if it is supported by substantial evidence." Squeglia,

2017 WL 773528, at *5.

The court starts its analysis by noting that claimant's

sole criticism of the ALJ's credibility determination – his

failure to properly consider Dr. Lindstrom's opinion – does not

involve any of the Avery factors.  More importantly, the ALJ's

credibility assessment touched upon many of the Avery factors,

including claimant's minimal and conservative treatment, her general medical improvement, and her activities of daily living. Finally, while clamant argues in a vague and conclusory way that the ALJ's mishandling of Dr. Lindstrom's opinion "ultimately affected the credibility assessment," Cl.'s Mem. of Law (doc. no. 11-1) 6, she does not identify any statement about a symptom that was improperly discounted and, necessarily, does not indicate how a purported error in crediting such a statement resulted in an erroneous determination that she was not disabled.  In short, the ALJ's assessment of claimant's statements about her symptoms is supported by substantial evidence, and that is all that is required.  See <u>Squeglia</u>, 2017 WL 773528, at *5.

### c.    **Summary**

While the ALJ made several mistakes in considering Dr. Lindstrom's opinion, those errors did not lead him to erroneously exclude depression-related limitations from her RFC or to incorrectly assess the credibility of her statements about her symptoms.  Accordingly, the ALJ's handling of Dr. Lindstrom's opinion creates no basis for a remand.

### 2.   <u>Montrose's Ankle Impairment</u>

Montrose also claims that the ALJ erred by failing to consider her ankle impairment.  Her argument on this issue,

however, is somewhat difficult to follow.  Legally, she pins her
argument upon the requirement that when assessing a claimant's
RFC, an ALJ must "consider all of [a claimant's] medically
determinable impairments of which [he is] aware, including . . .
medically determinable impairments that are not 'severe,'" 20
C.F.R. §§ 404.1545(a)(2) & 416.945(a)(2).  As it happens, the
ALJ cited those regulations in his decision and stated that he
was going to "take in account all of the allegations of symptoms
arising from both severe and non-severe physical impairments in
determining the claimant's residual functional capacity."  Tr.
34-35.  And, indeed, the ALJ noted that Montrose was prescribed
an ankle brace in 2014, and he discussed the results of her 2015
ankle x-ray, noting that the imaging report "failed to show
evidence of an acute ankle fracture or dislocation."  Tr. 34.
So, it is not accurate to say that the ALJ failed to consider
Montrose's ankle impairment.

Nonetheless, Montrose claims that the ALJ erred in his
consideration of that impairment.  She asserts:

> A dislocation/fracture is not the only possible
> impairment and an x-ray confirmed Achilles
> [enthesopathy] in 2015.  No medical opinion considered
> this condition.  Further, the ALJ seems to have
> overlooked this in the medical record.  . . .
>
> This should have been considered in combination
> with the other impairments.  In combination with the
> residual effects of [claimant]'s central nervous
> [system] disease, it could affect balance and

[claimant]'s ability to walk the required two or more
hours for sedentary work.

Cl.'s Mem. of Law (doc. no. 11-1) 7-8.  However, "[a]n ALJ, as a
lay person, is not qualified to interpret raw data in a medical
record."  Giandomenico v. U.S. Soc. Sec. Admin., No. 16-cv-506-
PB, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017) (quoting
Manso-Pizarro, 76 F.3d at 17).  As a result, an "ALJ is not
qualified to assess claimant's [RFC] based on the bare medical
record."  Berrios Lopez v. Sec'y of HHS, 951 F.2d 427, 430 (1st
Cir. 1991) (per curiam).  Thus, the ALJ in this case cannot be
faulted for failing to ascribe functional limitations to
Montrose based upon the results of her x-ray or her diagnosis of
Achilles enthesopathy.

    Indeed, "an ALJ ordinarily cannot consider raw medical data
in an RFC assessment until its functional significance is
assessed by a medical expert."  Giandomenico, 2017 WL 5484657,
at *4 (citing McGowen v. Colvin, No. 15-cv-329-JD, 2016 WL
1029480, at *6 (D.N.H. Mar. 15, 2016)).  Here, as claimant
correctly observes, there is no medical opinion in the record
that assesses the functional significance of her Achilles
enthesopathy.  Because claimant bears the burden of proving that
she is disabled, see Bowen, 482 U.S. at 146, the lack of an
opinion assessing the functional significance of her Achilles
enthesopathy provides no basis for determining that the ALJ

committed a reversible error in assessing her RFC, and the mere
possibility that Achilles enthesopathy "could affect balance and
[claimant's] ability to walk the two or more hours [required]
for sedentary work," Cl.'s Mem. of Law (doc. no. 11-1) 8, does
not alter that conclusion.

Montrose's final claim is that "[t]he ALJ's ignorance of
[her] ankle condition affected [his] credibility assessment."
Cl.'s Mem. of Law (doc. no. 11-1) 8.[12]  While that claim is not
as clear as it might be, Montrose seems to be asserting that
because the ALJ ignored her ankle condition, he erroneously
discounted her testimony that she could only stand for 30
minutes at a time.  There are two problems with that claim.

First, it does not appear that the ALJ ever discounted the
testimony at the center of Montrose's claim.  He did note her
testimony "that she could only stand for 30 minutes."  Tr. 38.
Then, when discussing "claimant's statements concerning the
intensity, persistence and limiting effects of [her] symptoms,"
Tr. 38, the ALJ referred to "the credibility of her alleged
disabling symptoms," Tr. 39 (emphasis added), and to her
allegations of totally disabling symptoms," Tr. 40 (emphasis

---

[12] As the court has already noted, the ALJ did mention the
2015 x-ray, so he was not ignorant of claimant's ankle
condition; he merely decided, correctly, not to include any
limitations in claimant's RFC based upon that impairment.

added).  But, an inability to stand for more than 30 minutes is not a totally disabling symptom, given the regulatory definition of sedentary work.  See 20 C.F.R. §§ 404.1567(a) & 916.967(a) So, while the ALJ found Montrose's statements about totally disabling symptoms to be "not entirely credible," Tr. 38, he did not discount the specific testimony on which Montrose bases her claim.

But, beyond that, even if the ALJ did discount that testimony, and did so in error, that error would be harmless because there is nothing in that testimony that runs counter to anything in the ALJ's decision.  First, the ALJ found that claimant could "stand/walk for two hours in an eight-hour workday."  Tr. 37.  That limitation is not inconsistent with claimant's testimony; a person who can only stand for 30 minutes at a time is not, by virtue of that limitation, unable to stand/walk for a total of two hours in an eight-hour workday. Then, the ALJ found that claimant was capable of a limited range of sedentary work.  "Jobs are sedentary if walking and standing are required occasionally," 20 C.F.R. §§ 404.1567(a) & 916.967(a), and there is nothing about an inability to stand for more than 30 minutes that is inconsistent with an ability to occasionally walk or stand.  So, even if the ALJ had erroneously discounted claimant's testimony that she could only stand for 30

minutes at a time, that testimony is not inconsistent with the ALJ's RFC assessment, which means that any failure to credit that testimony had no bearing on the ALJ's RFC assessment. For that reason, plaintiff's final argument is unavailing.

In sum, the ALJ's consideration of claimant's ankle impairment did not result in either a faulty RFC or an erroneous credibility assessment.

## IV. <u>Conclusion</u>

Because the ALJ committed neither a legal nor a factual error in evaluating Montrose's claim, <u>see</u> <u>Manso-Pizarro</u>, 76 F.3d at 16, her motion for an order reversing the Acting Commissioner's decision, document no. 11, should be denied; the Acting Commissioner's motion for an order affirming her decision, document no. 13, should be granted; and the clerk of the court should be directed to enter judgment in accordance with this order and close the case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. <u>See</u> Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order. <u>See</u> <u>Santos-Santos</u>

v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

December 14, 2017

cc:  D. Lance Tillinghast, Esq.
     T. David Plourde, Esq.